Our next case for argument this morning is United States v. Joel Helding, number 183270. Morning, Your Honors. Mark Michalik, Murphy-Desmond SC, appearing for Appellant and Defendant Joel Helding. May it please the Court. Mr. Helding is asking the Court to remand for resentencing and an evidentiary hearing as to his objection to the methamphetamine attributed to him in the pre-sentence investigation report that was based exclusively on statements by unidentified confidential informants. Mr. Helding and his co-defendant were apprehended in Wisconsin in separate vehicles with a total of 300 pounds or Mr. Helding was also in possession of some firearms. The government charged him with the crime of possession of that quantity of marijuana, which carried a five-year mandatory minimum, which they enhanced to a ten-year mandatory minimum by filing a section 851 information. Due to the account to 924C for possession of firearm in connection with that, Mr. Helding's mandatory minimum sentence was 15 years. He was also a career offender, given his prior convictions for possession and dealing relatively modest amounts of, you know, gram, three gram levels of methamphetamine. Given that career offender status, wouldn't his regardless of the meth amounts that were attributed to him? You know, Your Honor, that's what I said in my no merit report and the court rejected it. So the argument I'm making now in light of that is that perhaps the rule should be that when the district court exercises discretion under Korner and under United you know, in order for the guidelines to still have a procedural relevance in the sentencing, the court should then be obligated to follow, you know, what would have been the other, what otherwise have been the mandatory procedure. But you're not contesting, and I understand you're suggesting we adopt this new position, but you're not contesting, given his career offender status, that the marijuana that was found in the car and the apartment. That's correct, Your Honor, which is why I initially submitted an Anders brief. And you know, and this is the argument that's suggested by the court's order rejecting that Anders brief. I just learned last night, because I didn't think to look until now, according to the Sentencing Commission's report to Congress in August 2016, the Career Offender Sentencing Enhancements Report, page 22 of that report, in 2005, 43.3% of defendants who were subject to the Career Offender Guideline, 4B1.2, were sentenced within that range. By 2014, that had dropped to 27.5%. And the report points out that the government sponsorship, both for substantial assistance, but also just for other reasons, is responsible for part of that. In this case, even Mr. Anderson, the Assistant United States Attorney at Sentencing, he sort of asked, and this is page 10 of the sentencing transcript, page 17 of the appendix, he sort of asks for the bottom end of the Career Offender Guideline, but then he kind of backs off and says, you know, something above the declines to give the recommendation. So let's assume you're right. How, in that there should be some reference to what the guidelines would have been without the meth calculation by the district court. Given the 15-year mandatory minimum in this case, and I don't think you're contesting that there is a 15 year mandatory minimum, if the district court, in sentencing Mr. Helding, really started with the 15-year mandatory minimum, how could that possibly be an abuse of discretion here? Well, if the, you know, if the court had, so part of my argument for Mr. Helding is that we should have had an evidentiary hearing about these, about these confidential informants' meth quantities. I mean, they're talking about pounds. Putting that as, that's a separate issue. Your client could not have gotten a sentence below 15 years. Correct, Your Honor. And in sentencing Mr. Helding, when the district court said, I'm not going to sentence him as a career offender, court essentially said, let's start with the 15-year mandatory minimum and tell me to the government why I shouldn't impose 15 years. How is that an abuse of discretion under the facts of this case? I don't think that is an abuse of discretion, Your Honor. The question, and what we're raising here is, did the district court, you know, commit a procedural error by not calculating the guidelines correctly? And the question I would have is, you know, the judge doesn't specifically disclaim relying on the methamphetamine. He doesn't specifically disclaim relying on the, you know, what the Chapter 2 and Chapter 4 guideline range would have been without the career offender. He goes through all of that. He doesn't, he doesn't, you know, he doesn't say, well, I'm not even going to use the guidelines here. I'm going to start with the 15-year mandatory minimum and see if there's some factors that raise it up. So we're in a sort of a, the way I view it is a situation where there's a question of whether the court is anchored by what it thinks is the correctly calculated guideline range because probation went through that. He ruled on my meth objection. He just refused to have an evidentiary hearing. Without, without the, without a, with the, with the judge saying I'm not going to worry about the career offender guidelines and then getting this evidence and apparently, well, getting this report and apparently crediting these reports from CIs about very substantial quantities of methamphetamine, I would think the defendant looks awfully different in the case of a marijuana dealer. That was what I thought and that's what Mr. Helding thought. He referred to this as ghost meth and he, you know, even though, you know, of course in my conversations with him, my understanding of the law is the same as Mr. Anderson's argument. You've got the guidelines. The guidelines are career offender. Once those are correctly calculated, then the court's procedural obligations, the mandatory, you know, incorporate the guidelines into the sentencing have been satisfied. So what I'm suggesting, especially based on the evidence, is also just a more, a much more basic due process right to be sentenced on the basis of accurate information. Yes, Your Honor. And if, if pounds of methamphetamine are being taken into consideration under these circumstances that it's hard, and a judge does not expressly disclaim it, it's a little hard to see how it can be harmless. That's, that's my position, Your Honor. Yes. And I think that, you know, the government argues that all, all that I did to defend Mr. Helding was make a bare assertion that, oh, or a bare denial. Nuh-uh. We didn't, you know, he didn't do the, didn't do the pounds of meth. I don't think there's any, I, I don't really think there's much question that methamphetamine formed the sentence. I mean, I don't, I don't know how you could read the transcript otherwise. I was surprised to see that argument from your colleague on the other side, but be that as it may, the, the one thing that troubles me is that there's a fair bit of, I don't know whether you want to call it corroboration, but there's a, there's a fair bit of information about the meth that's in the PSR, right? It's, it's five CIs. You have a defendant who is an admitted meth user, an admitted meth dealer, albeit, you know, feed a personal addiction, it seems. But there's a lot of information that CI1 provides, and so one of the difficulties I had with your client's position is that, I really, I don't know who this guy is, and I really don't know how to respond. I don't know enough about what CI1 said. There's a lot in that PSR. There, there's one specific date, Your Honor, the December 16 date. He claims to see the pound of methamphetamine. You know, he claims to have received certain quantities over time. Date and place. He named a, he named Rib Mountain. He named Helbing's apartment in Merrill, Wisconsin, and it seems like the defendant admitted that he lived in Helbing, or wherever that, Merrill, Wisconsin at some point. I think he did live in Merrill, Wisconsin at some point, Your Honor, but, but, you know, I don't know how to, you know, without knowing the identity of this person, how to, do I try to come up with an alibi defense for this, this whole time period? What, what do I, where do I, and, and, and I'm, this is a non-rhetorical question, because if I've done this wrong, I want to know what I should do next time. What, what could I do to, to make a, a valid objection that would, that would entitle my client to a, or, or at least, you know, put the ball in the air that we might get an evidentiary hearing that's not going to be just a bare, just, you know, bare denial. Because I, other than maybe getting an investigator to go talk to this Mr. Zastrow, who's identified, and, and see if that leads me somewhere, I don't know how I put anything in besides saying no. What about a denial from your client, an affidavit from your client? That says it's not true, or? It says I don't deal in meth, I, I didn't deal in these quantities. I, I kind of thought that the, the objection itself was, I suppose it, so I, I would need to have a, like present a sworn statement from him rather than just a, you know, an assertion from me. I'm asking. That is one possibility. I understand. I, I just don't, I guess I don't see how that would be that much different than, than, you know, just swearing that, that he didn't do it versus saying he didn't do it. Well, in the evidentiary context, certainly in a, in a search warrant context or the context where you're asking for an evidentiary hearing, that makes a big difference if there's a sworn affidavit because then there's an issue of fact. Understood, Your Honor. Thank you. Thank you very much, Mr. Michalik. For the United States, Mr. Anderson. Good morning, Your Honor. My name's Rob Anderson. I'm the Assistant U.S. Attorney from the Western District of Wisconsin, signed to this case. This is, there, there is no error requiring remand here. The court used the correct procedure, followed the correct procedure, made the correct factual findings as to the applicable guidelines. Those were all performed by the court. The correct calculation of the guidelines was the career offender guidelines. The court made that clear in, at the sentencing, in the transcript. If you look at the statement of reasons, the guidelines referred to in the statement of reasons are all going through the career offender guidelines. The court does refer to the fact, because it was going to exercise its discretion under corner, it does refer to the fact, well, the otherwise guidelines would have been this and the minimum mandatory is this. There's no dispute that the, the defendant never disputed that the career offender guidelines applied. There's no dispute that the career offender guidelines were greater than the otherwise. Well, the career offender guidelines really don't get you very far here since the district judge said he wasn't going to be following. He was going to exercise his discretion under corner. Right. But that does not mean an exercise of discretion under corner. There's nothing in corner that says if you exercise discretion under corner, the career offender guidelines no longer exist at all. It, it voids it out entirely. I don't even know what that means. It doesn't mean you go automatically back to the original guidelines. The court can exercise its discretion to go a couple of months below the career offender guidelines. Right. It could go anywhere in between. So the rule the defendant's asking for, that if the, if the court decides to exercise its discretion under guideline, under, under, under corner, that this court should tell it, oh, now, now you have to go back to the other guidelines. Takes away the discretion from the court to sentence in between those two guidelines. Mr. Anderson, if Mr. Helding had not been a career offender, would there be a problem with the guideline calculation here? No. Because the court made adequate findings, as, as Judge Scudder referred to. There's plenty in the record. And the court referred to the details that the two confidential informants gave. The court referred to the fact there were other confidential informants. There were three more confidential informants who corroborated the general information of those informants whose information wasn't even relied on to, to calculate the guidelines. Were the investigator's forms, whether, I don't know if it was FBI sixes or DEA sixes or FBI 302s, were those reports attached to the PSR? Or was the court going just off of what the information was in the PSR? It was, we, we don't attach the copies of the reports to the PSR. Did the court ever ask for them or? Never asked for them, but, but there's, but the PSR summarizes the information from, from the reports. And what about? If there's an, if there's anything wrong in that summary, the defendant has an opportunity to object. His objection here was. What about the fact that the probation officer laid out this information but said that she was not in a position to determine the credibility of the CIs? What impact should that have on a court making these factual determinations based off the PSR? But that should have, the PSR writer is not, is not the one making the findings. She, I think she was merely indicating that this is up to the court to decide how you want to weigh this. But. So, is it sufficient for the court to decide that based solely on the PSR without something else? It, it is. And, and, and there are a site to a couple of cases in my brief. There are cases where this court has said numerous times the court can rely on information that is, that it, that it adopts from the PSR. And. The court can do that. In those cases, do we have similar disclaimers from the probation office? We cannot evaluate the credibility of this information. And there's no hearing? I don't know because I don't know what was in those other PSRs in those other cases, of course. But it's not unusual for the PSR agent to say, here's the information, Judge. We, and the PSR writer was saying, we are calculating this as, as this is, this is reliable information. But I'm not making, you know, it's up to the court ultimately to assess, assess the credibility here. There was nothing. What's the state, I'm sorry. Okay. You can finish your answer. Go ahead. Oh, there was nothing in the information of those PSRs to say that, that any of those confidential informants were, were, were lying or incorrect. Absolutely no way to say one way or the other, is there? Without being arbitrary about it? There, it, there was no information. There's no, there's no conflict or contrary information to any of the confidential informants. There was nothing that, and this is where the defendant should have come forward and said, look, if you're saying that I possessed a pound of methamphetamine on this date, I've never possessed that much on any occasion or I, I was. Why wouldn't the defendant's objection to the information in the PSR, specifically with respect to the meth, have been sufficient to contest that? Because it wasn't specific. And number one, it wasn't specific enough. It was, it was mere, if you, if you look at his objection, it was these paragraphs in the PSR are inaccurate. Now, what does that mean? What do you think a defendant would have to come forward with? An example like I just gave, like, like, okay, this confidential informant during this period of time said that you, you, he saw you with a pound of methamphetamine. And again, he, he never disputed, which he got an enhancement for, that he was using his, his residence for, maintained a residence for distribution, which is what was based on all those confidential informants statements that he was distributing out of his residence. He would have to say, gee, no, there's, I never, never dealt this much or I didn't deal in this drug. I never dealt in heroin or any of that. But it didn't matter in this case. These are the same CIs who said that Helding and Flores were going to the West Coast to bring back a lot of methamphetamine, right? They believed that, that they were going back to pick up methamphetamine. Right. And what they came back with was marijuana. With marijuana. So doesn't that raise at least some questions about credibility of their information in your mind? Actually, I would say it supports their credibility because it supports their credibility that they had been dealing in methamphetamine with, with Mr. Helding before this, that they expected that he was coming back with methamphetamine. And it was a surprise to them. Well, it's a surprise to the investigators that in fact, when they come back, they have marijuana instead of the methamphetamine, which they dealt before. So I say, I would argue that it actually supports their credibility. It's an interesting judo move there with the... Thank you. But the calculation, the correct calculation was the career offender calculation. The judge made that clear. And it's true whether the guidelines were under the PSR, what the PSR found, including the methamphetamine, or whether it was under the defendant's advocated calculation. It didn't matter. The drug quantity was eclipsed. I'm sorry. Go ahead. I'm sorry. The drug quantity was eclipsed by the career offender guideline. And then neither of those guidelines mattered or effectively mattered anyway. The court under corner exercised its discretion. But it does seem like, and I think you would agree, that the fact that the court had this information that Mr. Helding had been dealing meth played some role in the sentence. It did. And if you read the transcript, I reviewed it again this morning. I have. Yes, if you read the transcript, he says in there, even to the extent that there maybe are these other three confidential informants who are saying that he was dealing in meth, and I'm not taking that into consideration, at the very least, he says, it tells you about, or he's weighing this as part of the pattern of conduct of the defendant. Not necessarily the specific weight of methamphetamine or anything, but it tells you, as Judge Hamilton referred to earlier, it tells you about the pattern of conduct, his behavior outside of this specific charge that we have here. When the district court proceeded under corner, is it effectively proceeding under a 3553 analysis, just saying, I'm going to move away now from that guideline? Correct. I'm going to proceed under 3553A as if he's not a career offender? Right. He chose, Judge Connolly chose, to under corner vary from it, but he also exercised discretion to not even sentence him under the drug offense guideline that was otherwise calculated, and he started with the minimum mandatory and said to me, which took my frustration a bit, was, let's start at the minimum mandatory rather than the career offender, which would be twice as much, and tell me why he deserves more than the minimum mandatory. That's where the judge started. Both sides made our arguments, and the court chose a sentence that was neither within the career offender range nor was it within the drug offense guideline range. The 216 months is almost mathematically right in the middle of the difference between the low end without the career offender and the 180 mandatory minimum. It's almost right in the middle. And so I think, I mean, it seems to me the drug quantity, the meth quantity, definitely seems to have influenced Judge Connolly here. He did not say anything to that effect in the sentencing or in the statement of reasons. What he referred to in addressing the 3553 factors were the fact that he could have been sentenced much higher as a career offender, that he committed the offense while on supervision, that he was engaged in a dangerous flight, high speed flight from the police, and he possessed the firearms. And also drew in his girlfriend who had no prior convictions before this, got her involved in this too. And he picked a sentence three years above the minimum mandatory, which had little to do with either of those guideline calculations. But it's not, I'm arguing here, it's not error for him to have not held a hearing because the ultimate calculations were correctly done. The career offender, the court made sufficient findings as to the drug amount and the confidential informants. And even if it were error, it would be harmless because even if he used the defendant's drug quantities, he couldn't have gotten sentenced lower than the 15 years that he started consideration at. It's very clear throughout the record. 15 years is exactly where Judge Connolly started. That's the same place he would have started even if he'd used the defendant's drug calculations. So I argue there's no error. I ask you to affirm the judgment in the sentence unless there's any other questions. Thank you, Mr. Anderson. Thank you. Mr. Michalik, how much time is left? One minute if you'd like. Your Honors, and I appreciate Judge St. Eve's advice about future objections. Two things to that point. It's really a question of the form of the objection rather than the substance, and Mr. Anderson's suggestions are the same. He suggests I should have denied a specific, didn't deal meth in that quantity, didn't deal heroin. It's really no different than saying I didn't do it, the bare denial. Second, I was operating under the assumption that, as was Mr. Anderson here, that he's a career offender. Even if we make these objections, they're not going to affect the guideline range. As far as the corroboration among the CIs, I was unable to find any case where this court applied that sort of almost a presumption of reliability to an apparently reliable factual allegation in the pre-sentence report to an assertion, a factual assertion based purely upon confidential information. There was always something else. They were testifying at trial. There was trial testimony that corroborated it. They were testifying at sentencing. I didn't find any case where it was just the say-so of the confidential information. Thank you very much, Mr. Micholli. Thank you for the extra work that both counsel were asked to do by the court here. The case will be taken under advisement.